DUCKER, JUDGE:
The claimant, Bates & Rogers Construction Corporation, was awarded a contract on May 26, 1966 designated as Bridge #2070-9, Project No. 1-70-1(13) 2, Contract 3 and F0234(15), amounting to an estimated total of $594,281.50 for the relocation of the Baltimore & Ohio tracks so as to bring State Route 2 through the City of Wheeling, and involving a temporary trustle and relocating temporary tracks while the contractor built a new bridge for said purpose. The claim herein is for damages in the sum of $7,532.35 occasioned by delays of the State Road Commission in the latter’s direction of the work.
The contract provided for the work to be done within 240 working days and the contract was completed on March 3, 1967 in 232 working days, 8 days less than the allowed working days time. The claim is based on three delays which claimant alleges compelled it to take 47 more working days than was necessary to complete the project. The amount of such claim is stated in the petition as $7,770.35, but upon the hearing it was reduced by the sum of $238.00, leaving the net claim *18 $7,532.35, but according to our calculations from the testimony the total claim amounts to $7,324.85.
The first delay amounted to a total of 16 days, which the claimant alleges cost it a total of $2,400 in salary and overhead, and is based upon the failure of the Baltimore & Ohio Railroad, with whom the Road Commission had a separate contract, to begin the work necessary for it to do at the expiration of a 15 days’ notice by the claimant to the Railroad Company that the work was ready for the railroad work. It appears that the notice was given as provided in the specifications or the work schedule on August 14 that claimant would be ready for the Railroad Company to begin its work on August 28, but the Railroad Company resident engineer replied that the Railroad Company was experiencing material and manpower problems and that it could not begin its work until September 25. The contractor claims that it was the duty of the Railroad Company to so commence its work and that the claimant suffered such loss on that account.
The second delay is in connection with a change in the drawings for the crib wall construction required by the contract, alleging that the crib wall drawings were submitted for approval to the State Road Commission on September 19, 1966, but were returned by the Road Commission to the contractor on October 3d specifying needed corrections. Corrected drawings were submitted by the claimant on October 26, 1966, and while numerous inquiries were made by the claimant to the Road Commission between October 26, 1966 'and January 3, 1967, the corrected drawings were not approved by the Road Commission until March 3, 1967, causing, allegedly, the claimant to suffer both on this account and on account of the third delay item hereinafter specified, a total delay of 31 working days, or six weeks, in the prosecution of its work under the contract. The record, however, shows that the claimant was able to proceed with some of the crib wall work in the meantime, but claimant alleges it could not be done efficiently and, consequently, suffered a loss of $590 a week for 6 weeks in wages, plus a 30% fringe benefit cost, which makes a total of $4,602.00 to which is added $293.50 plus 10%, or $322.85 as the rental cost of a crane, making the grand total $4,924.83.
*19 The third delay, the claimant alleges, was due to the relocation of a water hydrant at Eleventh and Baltimore Streets in the City of Wheeling and the work necessary to take care of an unexpected underdrain just behind the existing west curb of Baltimore Street and running the full length of the crib wall. This underdrain was not shown on the plans and specifications of the contract, and when it was discovered the matter was taken up with the Road Commission and it was agreed that instead of paying for the work therefor on the bid price of $1,000, the work should be done on a force account basis, and so the claimant was paid therefor the sum of $1,733.00. The claimant claims that on account of the lack of the decision of the Road Commission as to where to place the hydrant and what to do about the drain a delay of 13 days was involved, which time loss was included in the six weeks specified in the foregoing second delay period of 31 days.
The Road Commission contends that inasmuch as the work was completed within the time provision of 240 working days, delays within that period which did not prevent the claimant from timely completing the work under the contract cannot be the basis for any claim for damages. While there is some merit to that proposition as it does show what was contemplated by the parties as the proper time for the completion of the work, considering reasonable delays which must be expected from time to time during the work, especially from a governmental agency with all its rules and regulations which cannot be expected to function as a person or a private corporation, yet it is not the controlling factor if delays have been caused by neglectful conduct on the part of those in charge. So we are of the opinion that each delay should be considered also in view of all the circumstances relating to it.
As to the first item of delay, namely 16 days because of the failure of the Baltimore & Ohio Railroad to commence its work immediately after the 15 days’ notice from the claimant, the claimant knew this work was dependent upon the performance by the Railroad Company under a separate agreement with the Road Commission, and there was no guaranty on the part of the Road Commission to the claimant that there would be no breach of that contract. We are of the opinion that claimant with the large contract which it had should have *20 anticipated the possibility of such delay 'and managed its work so as to prevent any loss on that account; so we hold that the delay was not unreasonable and we deny claimant his claim as to that charge.
As to the second item of delay, namely 31 working days, because of the crib wall drawings which were at first returned for corrections and finally approved, it appears that there were delays from September 19 to October 3, 1966 when the Road Commission considered the first plans; from October 26, 1966 to March 3, 1967, when the Road Commission considered and finally approved the second plans. In this connection it is well to observe that claimant took from October 3 to October 26 for its correction period. The pattern seemed to be set for two to three weeks as the periods for correction and approval, although that cannot be considered a positive basis for such action. The only period which to this Court seems unreasonable is that which elapsed between October 26 and March 3, a period of approximately four months. The evidence shows that although claimant could not proceed as efficiently in its work on the crib wall, it could work in the middle part of that work, and it is not clear what percentage of that work was done during the period in question. We do think the delay did have some damaging effect, and if we allow a reasonable time for the consideration by the Commission of the corrected plans and allow approximately fifty percent of the delay time claimed in this second item, we believe we will be doing equity in the matter, and in doing so we will allow claimant the sum of Two Thousand, Five Hundred Dollars ($2,500.00).
As to the third item of delay, namely the relocation of the water hydrant and the work on the underdrain, we are of the opinion that the following specification which was applicable to this situation controls our decision as to this part of the claim:
“It is the Contractor’s responsibility to verify the location of each facility when performing work which may affect these utilities including probing, excavation or any other precaution required to confirm location. The Contractor will be responsible for 'any damage or disruption to the utility lines which are now in operation.”
*21 Although the matter of the drain was unknown to both the Road Commission and the claimant, it was their joint responsibility to determine such a matter. It was not of such magnitude as to materially change the work of the contract to such 'an extent as to exceed the extra compensation which was allowed on account of such change. A reasonable degree of change in these matters must be contemplated in a contract of this magnitude and we are of the opinion that this was within such reasonable degree and has been compensated for by the State.
We are of the opinion to, and do, hold that the claimant is entitled to an award of $2,500.00.
Award of $2,500.00.